UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROPERTY OF THE PEOPLE, INC., *et al.*, | ) |
| | ) |
| PLAINTIFFS | ) Civil Action No. 1:18-cv-1202 (CJN) |
| vs. | ) |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| DEFENDANT | ) |
| | ) |

**PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs respectfully cross-move for summary judgment. A supporting memorandum, exhibits, statement of facts, and proposed order are attached.

Respectfully Submitted,

 /s/ Jeffrey Light_____
    Jeffrey L. Light
    D.C. Bar #485360
    1712 Eye St., NW, Suite 915
    Washington, DC 20006
    (202)277-6213
    Jeffrey@LawOfficeOfJeffreyLight.com
    *Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PROPERTY OF THE PEOPLE, INC., *et al.*, | ) | |
| | ) | |
| PLAINTIFFS | ) | Civil Action No. 1:18-cv-1202 (CJN) |
| vs. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| DEFENDANT | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case arises out of Plaintiffs' FOIA requests for FBI records pertaining to two filmmakers, their film production company, two of their documentary films, eight "ag-gag" laws, and the term "ag-gag." The phrase "ag-gag" refers to laws which seek to "gag" whistleblowers and activists by criminalizing the recording of footage of animal agriculture.[1]

The FBI has now moved for summary judgment, arguing that it has fully complied with Plaintiffs' FOIA requests. The Court should deny the FBI's Motion for Summary Judgment and grant Plaintiffs' Cross-Motion for Summary Judgment for four reasons: (1) the FBI improperly failed to conduct a full-text search of its Central Records System for

---

[1] The Ninth Circuit has described laws "dubbed by some as Ag-Gag law" as "legislation—targeted at undercover investigation of agricultural operations—broadly criminalizes making misrepresentations to access an agricultural production facility as well as making audio and video recordings of the facility without the owner's consent." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1189 (9th Cir. 2018)

the title of the movie "Cowspiracy"; (2) the FBI improperly failed to conduct a full-text search for the term "ag-gag" and the names of the enumerated pieces of legislation; (3) the FBI improperly failed to search the Office of Congressional Affairs, the Office of General Counsel, and the Office of the Director for records mentioning or referring to the enumerated pieces of federal legislation; and (4) to the extent the FBI asserted an exclusion to any of Plaintiffs' FOIA requests, the use of an exclusion is not justified under the circumstances presented here.

## ARGUMENT

### I.      Legal standard

"It is well settled in Freedom of Information Act cases as in any others that summary judgment may be granted only if the moving party proves that no substantial and material facts are in dispute and that he is entitled to judgment as a matter of law." *Founding Church of Scientology, Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979). Thus, there are two distinct requirements that the moving party must meet: (1) proof that no substantial and material facts are in dispute; and (2) that the party is entitled to judgment as a matter of law.

### A.  Proof that no substantial and material facts are in dispute

The moving party "must demonstrate the absence of any factual disputes by citing to particular parts of materials in the record, including . . .  affidavits or declarations . . . or other materials[.]" Fed. R. Civ. Pro. R. 56(c)(1)(A). Thus, "in adjudicating the adequacy of the agency's identification and retrieval efforts, the trial court may be warranted in relying upon agency affidavits[.]" *Founding Church of Scientology,* 610 F.2d at 836. However, reliance on agency affidavits is only permissible when those affidavits are

"relatively detailed," "nonconclusory," and "submitted in good faith." *Id.* These requirements are consistent with Rule 56, which requires material cited in support of the absence of a material fact to be admissible and not submitted in bad faith. Fed. R. Civ. Pro. R. 56(c), (h).

If the agency's affidavit does *not* sufficiently describe the search, the Court's inquiry is at an end. The agency has not met its initial burden of production and it is not entitled to summary judgment. *Weisberg v. United States Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) (reversing grant of summary judgment where agency affidavits "do not provide information specific enough to enable [the requester] to challenge the procedures utilized.") If an agency's affidavit *does* sufficiently describe the search, its "affidavit[ is] accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). In other words, if the agency submits a sufficiently detailed affidavit that would, if undisputed, entitle it to judgment as a matter of law, the agency has met its initial burden of production. The burden of production then shifts to the requester as the non-moving party to produce specific evidence showing that there *are* genuine factual disputes. *Hendricks v. Geithner*, 568 F.3d 1008, 1012 (D.C. Cir. 2009).[2]

The D.C. Circuit has recognized that once the burden of production has shifted to the requester, one way in which he can meet his and thus create a factual dispute is to point to a "lead" that is "both clear and certain" and "so apparent that the [FBI] cannot in good faith fail to pursue it." *Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) (alteration in original). As noted in *Mobley*, that was the argument convincingly advanced by the

---

[2] *Hendricks* predates the 2010 amendment to Rule 56. However, "The standard for granting summary judgment remains unchanged." Notes of Advisory Committee to 2010 amendments.

requester in *Campbell*, 164 F.3d at 27-28. In *Campbell*, the FBI limited its search to the CRS even though documents produced by the FBI "alluded to potentially responsive . . . tickler records[.]" *Id.* at 27. That reference, according to the FBI, was too speculative "because ticklers are not generally preserved for posterity and also might not contain information distinct from what the FBI already found within the CRS." *Id.* at 28. The D.C. Circuit held, however, that it was a "sufficient predicate to justify searching for a particular type of record" (i.e., ticklers). Thus, after the agency in *Campbell* met its initial burden of production and the burden shifted to the requester, summary judgment was still improper because the requester met *his* burden of production to show there is a factual dispute.

### B. Entitlement to judgment as a matter of law

Even if a moving party establishes that no substantial and material facts are in dispute, however, the party is not entitled to summary judgment unless it also shows entitlement to judgment as a matter of law. Fed. R. Civ. Pro. Rule 56(e)(3), Notes of Advisory Committee to 2010 amendments. As explained above, when the agency has met its initial burden of production by submission of an affidavit which would entitle it to judgment as a matter of law, the burden of production then shifts to the requester. However, because under substantive FOIA law the agency bears the burden of persuasion at trial, it is the agency which must demonstrate that it is entitled to judgment as a matter of law at the summary judgment stage. *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983) ("[W]e hold that the agency bears the burden of establishing that any limitations on the search it undertakes in a particular case comport with its obligation to conduct a reasonably thorough investigation"); *id.* at n.23 (burden referenced is "burden of persuasion"); *Or. Natural Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1251 (D. Or. 2006) ("The agency has the burden of persuasion that any limitations it imposes on a

4

search comport with its obligation to conduct a reasonably thorough investigation")

(internal quotation marks omitted). Thus, the Court may still deny the FBI's motion for

summary judgment – and grant Plaintiff's cross-motion – on the ground that the FBI has

not met its burden of persuasion by showing it is entitled to judgment as a matter of law.

*Painting & Drywall Work Pres. Fund v. Dep't of Hous. & Urban Dev.*, 936 F.2d 1300,

1302 (D.C. Cir. 1991) (where "there is no quarrel as to the material facts," court must still

apply the relevant law).


### C.  Application to FOIA searches

To describe more concretely what is at issue in this case, Plaintiffs present three

hypotheticals applying summary judgment principles to FOIA searches.[3]

First, consider a situation in which an agency declaration describes its records

systems, but then states simply that "no records responsive to the request had been

located." In this example, the agency has not met its burden of production because its

affidavit is conclusory and provides insufficient detail as to what searches were actually

conducted. Accordingly, the agency's affidavit may not be relied upon and the motion for

summary judgment would be denied.[4]

Second, consider a situation in which an agency submits an affidavit containing

extensive, non-conclusory details about its search. However, the affidavit describes a

search involving the selection of five pages completely at random from a vast library of

paper files. In this scenario, although the court may rely upon the agency's affidavit,

summary judgment must still be denied – not because of any deficiencies in the affidavit

---

[3] The examples are hypotheticals designed to clarify Plaintiff's legal arguments. They are
not intended to be a representation of the record evidence in this case.
[4] This example is based on the facts in *Steinberg v. United States DOJ*, 23 F.3d 548, 552
(D.C. Cir. 1994).

– but because the search itself is so inadequate that the agency cannot be said to have met its burden of showing that it is entitled to judgment as a matter of law.

Although the requester might prevail by legal argument alone because the agency bears the burden of persuasion at trial,[5] he might considerably strengthen his case by introducing additional evidence into the record. For example, suppose that the agency maintains a computerized database that would allow for a systematic and thorough search of the library for responsive records. The evidence of this computer system would not create a factual dispute; it does not contradict anything in the agency's declaration. Nevertheless, the existence of the computer system might lead the Court to deny the agency's summary judgment motion because the availability of this alternative form of search bolsters the requester's argument that the agency's manual search is unreasonable as a matter of law.[6]

In a third scenario, an agency submits an affidavit containing extensive, nonconclusory details describing what appears to be, on its face, an adequate search. The agency has met its burden of production by submitting an affidavit which, on its face, is sufficient to demonstrate the agency's entitlement to judgment as a matter of law. The burden of production then shifts to the requester. The requester points out that one of the documents produced by the agency contains a clear and certain lead that the agency could not reasonably have overlooked. By establishing such a factual predicate, even if it is

---

[5] The FBI, as the "moving party [which] will bear the burden of persuasion at trial . . . must support its motion with credible evidence . . . *that would entitle it to a directed verdict* if not controverted at trial." *Cobell v. Norton*, 260 F. Supp. 2d 110, 117 (D.D.C. 2003) (emphasis added). The FBI's declaration would constitute "credible evidence" if nonconclusory, reasonably detailed, and submitted in good faith.

[6] *Davis v. DOJ*, 460 F.3d 92, 105 (D.C. Cir. 2006) ("In determining whether an agency's search is reasonable, a court must consider . . . the existence of readily available alternatives, and the burden of employing those alternatives. In this case, the methodology employed by the agency was extremely unlikely to produce the needed information, and it appears -- although we do not know for certain – that there are readily available alternatives that would not impose an undue burden on the government.")

speculative to a degree (the referenced records may no longer exist), the agency's motion for summary judgment would need to be denied because there is a genuine issue of fact.[7] Alternatively, the requester might meet his burden of production by demonstrating the existence of a genuine issue of fact through the submission of his own affidavit contradicting statements made in the agency's affidavit[8] or by demonstrating bad faith on the part of the agency. However, he cannot meet his burden of production by merely speculating that there must be additional responsive pages.

As to the most highly contested adequacy of the search issue in this case – the need for an ECF full-text search – Plaintiffs' arguments are based on the legal theory in the second scenario. The issue raised by Plaintiffs with respect to ECF is not, as in the first scenario, whether the FBI failed to describe the search that it conducted. Nor is the issue raised by Plaintiff aimed at creating a dispute as to a material fact by contradicting the FBI's affidavit, as in the third scenario. Plaintiffs' argument is that the FBI's search is inadequate and therefore the FBI has not met its burden by demonstrating that it is entitled to judgment as a matter of law. The evidence presented by Plaintiffs is intended to call into question the legal adequacy of the FBI's search, not to show the existence genuine issues of fact. Indeed, the absence of genuine issue of fact is why the Court should grant summary judgment to *Plaintiffs*. Before the Court may determine if Plaintiffs have met *their* burden, it must determine whether the FBI, which bears the burden of persuasion at trial, has met *its* burden. *Cobell v. Norton*, 260 F. Supp. 2d 110, 117 (D.D.C. 2003) ("The court need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until the Court finds that the moving party has discharged its initial burden of production.")

---

[7] *Campbell*, 164 F.3d at 28-29.
[8] This example is based on the facts in *Steinberg*, 23 F.3d at 552. *See also Maydak v. United States*, 630 F.3d 166, 181 (D.C. Cir. 2010) (submission of contradictory affidavit may meet the non-movant's "burden of production[.]")

## II.     The FBI improperly failed to conduct a full-text search for the term "Cowspiracy."

Although the FBI conducted a search of its Central Records System (CRS) for records *indexed* to the term "Cowspiracy," it did not conduct a search reasonably calculated to locate all records in the CRS *mentioning* "Cowspiracy," as Plaintiffs' FOIA request sought. The FBI's limitation of its search of the CRS to only an index search is unreasonable because the film "Cowspiracy" would not be indexed in the CRS, as it does not have "continuing significance to the FBI," and FBI Special Agents and other employees would not need to find mentions of the film "in reference to other investigations or intelligence activities." (Hardy Decl. ¶ 57 & n.14.)

The fact that there are no records indexed to the term "Cowspiracy" does not mean that no records exist which mention "Cowspiracy." In order to find documents which mention "Cowspiracy," the FBI would need to conduct a text search of its CRS for "Cowspiracy." The search tool used by the FBI to conduct such a search is the Electronic Case File (ECF). As Mr. Hardy has explained in a previous case, "ECF serves as the central electronic repository for the FBI's official text-based documents." *Roberts v. FBI*, 845 F. Supp. 2d 96, 100 (D.D.C. 2012) (quoting Hardy declaration).

The FBI has refused to perform an ECF text search in this case, but its rationale is largely based on problems inherent in conducting text searches for the names of individuals. The FBI may well be correct that "mere mentions are generally not accompanied by any other identifying information, such as a date of birth, social security number, address, phone number, other identifying information" such that "[a] full text search would . . . return random and incomplete references to individuals." (Hardy Decl.

¶ 57.) However, this rationale does not explain why a search for the term "Cowspiracy" would be impractical.

The FBI argues that the "net result of such a[n ECF text] search is *typically* a significant use of time and resources with little or no additional responsive information being identified." (Hardy Decl. ¶ 57) (emphasis added). However, the FBI's explanation for why an ECF text search would not be appropriate needs to be tailored to the specifics of the particular request at issue. *See Shapiro v. DOJ*, 34 F. Supp. 3d 89, 98-99 (D.D.C. 2014) ("Although the Court recognizes that a full-text search may not be warranted in every case, it finds the FBI's explanation as to why it was unwarranted here to be lacking.") There are, in fact, numerous cases in which the FBI has conducted an ECF text search, either of its own volition or pursuant to a court order.[9] Thus, the question before the Court is not whether an ECF text search is generally appropriate, but whether an ECF text search for "Cowspiracy" is appropriate.

This Court has held that even where a plaintiff proposes that the FBI conduct an ECF text search using broad search terms, as long as the terms "are directly related to [the

---

[9] *See e.g.*, *ACLU v. FBI*, No. C 12-03728 SI, 2013 U.S. Dist. LEXIS 93079 at *7 (N.D. Cal. July 1, 2013) ("The FBI searched the CRS indices using 43 separate terms related to the Occupy movement, but did not find any responsive records. Then the FBI conducted text search of its Electronic Case File ('ECF'), which is an electronic repository for official text-based documents. Through this method, the FBI found the responsive documents that were partially released to plaintiffs"); *Negley v. FBI*, 658 F. Supp. 2d 50, 58 (D.D.C. 2009); *Williams v. FBI*, No. 2:13-cv-00056-DN, 2014 U.S. Dist. LEXIS 43955 at *11-*12 (D. Utah Mar. 31, 2014) ("In the second declaration submitted by the FBI, Hardy clarifies that '[d]ue to the specific nature of the request, the FBI went beyond its normal searching policies and conducted a text search of the ECF' using  a variety of search terms in an attempt to locate the Freeh Memorandum"); *Coss v. United States DOJ*, 133 F. Supp. 3d 1, 3 (D.D.C. 2015) ( "FBI used its Electronic Case File (ECF) system, one of three applications that organize information stored in the CRS, to conduct a full-text search of the system for 'Guillermo Casas notebook' and 'Casas notebook.'")

plaintiff's] specific request," then "even if there is a large volume of responsive documents, [the plaintiff's] request would compel their production." *Mattachine Soc'y of Wash. v. United States DOJ*, 267 F. Supp. 3d 218, 227 (D.D.C. 2017). Here, an ECF text search would be appropriate because the term "Cowspiracy" is singular in nature and thus directly relates to Plaintiffs' request. Far from being a common word or phrase, "Cowspiracy" is a neologism used solely as the title of a film. Thus, the FBI's complaint that an ECF text search would require the agency to "go through each hit to determine whether it can determine if the hit is actually identifiable as the subject of the request" (Hardy Decl. ¶ 57) is inapplicable here. Every "hit" of "Cowspiracy" would be identifiable as the subject of the request because "Cowspiracy" is not used in any context aside from the name of the film.

Moreover, there is no reason to believe that an ECF text search of the term "Cowspiracy" would result in a large number of hits. Even in *Mattachine Soc'y of Wash.* where there were "over 5,500 Sentinel ECF hits," this Court rejected the FBI's protest of burdensomeness because the agency "ha[d] not reviewed any portion of this search or others like it, offer[ed] no projections of what the results might be, and d[id] not estimate the number of additional hours, resources, or funds make these searches rise to level of being an undue burden. The Government provide[d] no context in which to assess the volume of responses as being disproportionately burdensome as compared to similar requests. The FBI is asking the Court to declare that these searches would be unduly burdensome merely because the FBI suspects that they might be so, and that is not sufficient." 267 F. Supp. 3d at 227.

Here, the FBI has not even provided the Court with an estimate of how many hits would be returned by an ECF text search of the term "Cowspiracy." It is therefore impossible for the Court to find that such a search would be overly burdensome. If, for example, only three hits are returned by an ECF text search for "Cowspiracy,"[10] the FBI could hardly argue that reviewing those three hits would be unduly burdensome. Indeed, there might even be no hits for "Cowspiracy," rendering moot the FBI's concerns about the burdensomeness of reviewing hits.

For these reasons, the FBI should be ordered to conduct an ECF text search for "Cowspiracy" and release any nonexempt records or portions thereof.

### III.   The FBI improperly failed to conduct a full-text search for the term "ag-gag" and the enumerated pieces of legislation

Just as with the FBI's failure to conduct an ECF text search for "Cowspiracy," the FBI's search was inadequate with regard to its failure to conduct an ECF text search for the term "ag-gag" and the enumerated pieces of legislation. As with the term "Cowspiracy," the term "ag-gag" is singular in nature. Any reference to "ag-gag" would necessarily be a reference to "ag-gag" legislation because the term is not used in any context other than to describe type of legislation that criminalizes undercover investigations of agricultural businesses.

With respect to the portions of Plaintiffs' request that seek mentions of enumerated legislation, two are pieces of federal legislation and both of these implicate the functions

---

[10] The film "Cowspiracy" was released on June 26, 2014. See "Cowspiracy: The Sustainability Secret, Release Info," available at https://www.imdb.com/title/tt3302820/releaseinfo?ref_=tt_dt_dt (last accessed Sep. 11, 2019). Therefore, the FBI could further minimize the possibility of hits that do not relate to the film by limiting its search to records created on or after the release date of the film.

and mission of the FBI. The first is a bill entitled the "Agricultural Terrorism Prevention and Response Act of 2001," the stated purpose of which was "[t]o respond to the vulnerability of the United States agricultural production and food supply system to international terrorism." H.R. Rep. No. 107-3198. Given the central role of the FBI in preventing and combating terrorism, the FBI would be expected to have at least referenced this legislation in one or more documents.

The Farm Animal and Research Facilities Protection Act (FARFPA) was "designed to foster and promote food production and animal research and education by protecting animals and animal facilities from illegal activities." H.R. Rep. No. 101-953. The House Conference Report indicates that the Chairman of the House Committee on Agriculture, Subcommittee on Department Operations, Research, and Foreign Agriculture sought the opinion of the DOJ and FBI as to "what criteria would have to be present in legislation to force involvement of both the Department of Justice and the Federal Bureau of Investigation in crimes of a less egregious nature." *Id.* The FBI expressed its view on the lack of a need for such legislation via the Acting Assistant Attorney General. *Id*. ("We believe that such legislation is unnecessary because the Department and the Federal Bureau of Investigation share the view of Congress that appropriate offenses against research facilities can and should be prosecuted federally.") The fact that FARFPA concerned the FBI's functions and that the FBI expressed an opinion on the legislation suggests that, at least at one time, the FBI possessed responsive records.

The FBI's failure to locate FARFPA records demonstrates that the legislation is not indexed in the CRS. Documents mentioning FARFPA, however, *are* in the CRS. (Ex. 1 at 2-11.) While Plaintiffs cannot prove with certainty that such records still exist, the

existence of records is always speculative to some extent until the agency performs the search. *Campbell*, 164 F.3d at 28 ("It is true that Campbell has claimed only that a tickler existed at one time, not that it exists today or that it contains unique information. Yet in any FOIA request, the existence of responsive documents is somewhat 'speculative' until the agency has finished looking for them. As the relevance of some records may be more speculative than others, the proper inquiry is whether the requesting party has established a sufficient predicate to justify searching for a particular type of record.") Here, Plaintiffs have established a sufficient predicate to justify a text search for FARFPA and the other enumerated legislation because they have demonstrated that responsive records existed at one time and that there is a sufficient link between the FBI and the particular type of record at issue here— records discussing legislation.

To be clear, Plaintiffs are not arguing that the FBI's search is inadequate solely because it failed to locate these responsive records. Rather, Plaintiffs point to this evidence to show the flaw in the FBI's search *methodology*. Specifically, the evidence makes clear that where a FOIA request seeks records mentioning an identified piece of legislation, it is not reasonable to limit a search to the FBI's indices because the name of the legislation would not indexed. A full-text search is the *only* means by which records responsive to a request for identified legislation, if they exist, would be found.

As to the potential burdensomeness of any full-text search, the term "Agricultural Terrorism Prevention and Response Act of 2001" is singular in nature; there is no other Agricultural Terrorism Prevention and Response Act of 2001. Therefore, any hits generated by the full-text search will be responsive. Although the term "Farm Animal and Research Facilities Protection Act" is not singular in nature – there are state laws with the

same name – the term is specific enough that the number of false hits would be minimal. Given that the FBI is part of the federal government, references to "Farm Animal and Research Facilities Protection Act" are far more likely to refer to the federal FARFPA than to, say, the Montana FARFPA.

The other enumerated pieces of legislation are state legislation. Although enforcement of state laws does not fall within the FBI's jurisdiction, through its Joint Terrorism Task Force (JTTF) the FBI assists state and local law enforcement authorities with terrorism investigations involving violations of state law. *United States v. Abdi*, 463 F.3d 547, 550 n.3 (6th Cir. 2006) ("JTTF is a multi-agency organization consisting of law enforcement authorities from different federal agencies, as well as *state* and local authorities. Its purpose is to collaborate in combating terrorism through pooling resources and sharing information, and to identify, locate and apprehend individuals who pose a threat to national security by all means available, whether it be through administrative arrests, or *state* or federal criminal charges") (emphasis added). For example, the FBI has previously disclosed a record mentioning the Georgia Farm Animal and Research Facilities Protection Act, a state law pertaining to what the FBI would consider to be acts of terrorism. (Ex. 1 at 1.) Accordingly, there is reason to believe that the FBI possesses responsive records mentioning or referring to the various pieces of state legislation enumerated in Plaintiffs' request. Further, similar to the federal legislation at issue, many of the state laws at issue here are singular in nature either because the name of the state is included in the title of the legislation (e.g., "Alabama Farm Animal, Crop, and Research Facilities Protection Act") or because the title of the legislation was only used by one

state (e.g., Kansas's "Farm Animal and Field Crop and Research Facilities Protection

Act").

### IV.     The FBI improperly failed to search three offices for records mentioning to "ag-gag" or the enumerated pieces of federal legislation.

The CRS is not the only place where responsive records, if they exist, are likely to be

found. Records mentioning "ag-gag" or the federal legislation listed in Plaintiffs' FOIA

request would reasonably be expected to reside in three locations outside of the CRS—

the Office of Congressional Affairs (OCA), the Office of the General Counsel (OGC),

and the Officer of the Director (OD).

As noted, *supra*, two of the enumerated pieces of federal legislation relate to key

functions and activities of the FBI. Since OCA "manages all FBI interactions with

Congress,"[11] it would be a natural place to look for records mentioning or referring to the

Agricultural Terrorism Prevention and Response Act of 2001 and the Farm Animal and

Research Facilities Protection Act.

The OGC "provides legal advice to the entire Federal Bureau Investigation (FBI),

including the Director, FBI headquarters officials, and agents in the 56 domestic field

offices, on a wide range of substantive legal issues."[12] Therefore, OGC would be a

reasonable place to look for records about specific pieces of legislation which raise legal

issues for the FBI.

---

[11] https://www.fbi.gov/news/pressrel/press-releases/jill-c-tyson-named-assistant-director-of-the-office-of-congressional-affairs
[12] https://www.justice.gov/legal-careers/job/assistant-general-counsel-2

The FBI's OD is the parent office of which both OCA and OGC are a part.[13] Therefore, particularly significant issues being addressed by OCA or OGC would be expected to also be shared with the Office of the Director.

Although the CRS stores many of the FBI's records, the agency has recognized that targeted searches of OCA, OGC, and OD is at time necessary to locate records which would be outside of the CRS. *See Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402-03 (D.C. Cir. 2017) (targeted search of OGC); *ACLU v. DOJ*, No. 11-2553 (ES), 2012 U.S. Dist. LEXIS 142178 at *11, 2012 WL 4660515 (D.N.J. Oct. 1, 2012) (targeted search of, *inter alia*, OGC and OCA); *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enf't*, No. 16-cv-387 (KBF), 2017 U.S. Dist. LEXIS 66429 at *20-*21 (S.D.N.Y. Apr. 19, 2017) (targeted search of OD and OGC). Given the roles of these offices and the nature of the requests at issue here, the FBI should be required to conduct a targeted search of OGC, OCA, and OD.

## V.      Any exclusion asserted by the FBI is improper

The subjects of Plaintiffs' requests do not involve a pending investigation; an informant; or foreign intelligence, counterintelligence or international terrorism. Therefore, to the extent that the FBI is relying on the exclusion provision of 5 U.S.C. § 552(c), the FBI should be required to release any nonexempt portions of such records.

---

[13] https://www.fbi.gov/about/leadership-and-structure

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court deny Defendant's motion for summary judgment and grant their cross-motion for summary judgment.

Respectfully Submitted,

_/s/ Jeffrey Light_____
    Jeffrey L. Light
    D.C. Bar #485360
    1712 Eye St., NW, Suite 915
    Washington, DC 20006
    (202)277-6213
    Jeffrey@LawOfficeOfJeffreyLight.com
    *Counsel for Plaintiffs*

17