UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., et al.,

        *Plaintiffs*,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE, et al.,

        *Defendants*.

Civil Action No. 1:18-cv-01202 (CJN)

## MEMORANDUM OPINION

In this suit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Plaintiffs seek to compel the Federal Bureau of Investigation to release records relating to the documentary film "Cowspiracy," the term "ag-gag," and certain pieces of enumerated legislation. *See generally* Am. Compl., ECF No. 4. Defendants claim that the FBI conducted a reasonable search for these records, finding no results. *See generally* Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 12. Plaintiffs insist that the FBI's search was inadequate. Both parties moved for summary judgment. *Id.*; Pls.' Mot. for Summ. J. ("Pls.' Mot."), ECF No. 14. Because the Court concludes that Defendants have not conducted an adequate search, it will grant in part and deny in part the parties' respective motions.

### I.    Background

Property of the People, a nonprofit organization promoting government transparency, and its founder Ryan Shapiro submitted a series of FOIA requests to the FBI in 2018. *See* Pls.' Mot. at 1. Plaintiffs sought, among other things, all records relating to the documentary film

1

"Cowspiracy," the term "ag-gag," and eight specific pieces legislation.[1]  The FBI responded to each request the same way—informing Plaintiffs that a search of the FBI's Central Records System failed to locate any records responsive to their requests.

The Central Records System ("CRS") is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency.  David M. Hardy Decl., ECF 12-4, ¶ 34.  The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices worldwide.  *Id.*  The CRS consists of a numerical sequence of files, called FBI "classifications," organized by subject matter.  *Id.* ¶ 35.  The broad array of CRS file classification categories includes types of criminal conduct and investigations conducted by the FBI.  *See id.*  As investigations progress, pertinent documents are added to each file and assigned a document number.  *See id.*

When the FBI needs to find a relevant document within the enormous amount of information contained in the CRS, the FBI relies on CRS's indices.  *See* Hardy Decl. ¶ 36.  The FBI indexes the CRS in a manner designed to meet the organization's investigative needs and priorities.  FBI investigators therefore index information in the CRS when, at their discretion, they deem the information "of sufficient significance to warrant . . . future retrieval."  *Id.* ¶ 37.  They "may index . . . by individual (persons), organization (organizational entities, places, and things), or event (*e.g.*, a terrorist attack or bank robbery)."  *Id.*

---

[1] The eight pieces of legislation that Plaintiffs seek any and all records related to are the Farm Animal Research Facilities Protection Act; the Agricultural Terrorism Prevention and Response Act of 2001; the Farm Animal and Field Crop and Research Facilities Protection Act; the Farm Animal and Research Facilities Protection Act; the Animal Research Facility Damage Act, Alabama Farm Animal, Crop, and Research Facilities Protection Act; the Agricultural Interference Act; and the Idaho Agricultural Security Act.

The entries in the general indices fall into two category types: main entries and reference entries. *See* Hardy Decl. ¶ 35. Main index entries are created for the primary subject of an investigation; reference index entries are created for individuals or entities that, although not the focus of investigation, have sufficient significance that the information may prove useful to future investigations. *See id.* ¶ 36.

When responding to FOIA requests, the FBI's general policy is to search for and identify only main index entries at the administrative stage. *See* Hardy Decl. ¶ 47. But because Plaintiffs' requests specifically asked the FBI to search the reference index entries as well, the FBI did so at the administrative stage. *See id.* ¶ 49. Neither search produced results. Assuming that these searches satisfied its FOIA obligations, the FBI did not conduct any additional searches that Plaintiffs had requested, such as a full-text search of the CRS, a search of the Electronic Surveillance indices, or a search of specific FBI offices.

Believing the search to be inadequate, Plaintiffs filed this litigation, and the Parties ultimately cross-moved moved for summary judgment. *See* Defs.' Mot. at 4; Pls.' Mot. at 5–6. Defendants supported their motion with two declarations from David M. Hardy, the Section Chief of the Record/Information Dissemination Section of the FBI. *See generally* Hardy Decl.; Second David M. Hardy Decl., ECF 21-1.

## II.     Legal Standard

"[T]he vast majority of FOIA cases can be resolved on summary judgment.*" Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). To prevail at this stage, a movant must demonstrate that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

3

Congress enacted FOIA, 5 U.S.C. § 552, "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (cleaned up).  Under FOIA, Federal agencies must release all records responsive to a reasonable request for production unless certain exemptions outlined in the statute apply. *See* 5 U.S.C. §§ 552(a)(3)(A), (4)(B), 552(b).  "FOIA mandates a 'strong presumption in favor of disclosure,'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991))—so much so that FOIA "expressly places the burden 'on the agency to sustain its action' and directs the district courts 'to determine the matter *de novo*,'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

"[A]n agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (cleaned up).  The adequacy of the search does not turn on "whether there might be" more uncovered documents.  *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996).  And the "failure to turn up a particular document . . . does not undermine the determination that the agency conducted an adequate search." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).  Rather, a search is adequate if the agency "show[s], with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

The agency meets this burden through declarations denoting "which files were searched" and "reflect[ing] a systematic approach to document location." *Oglesby*, 930 F.2d at 68.  Such agency declarations "enjoy a presumption of good faith that withstand purely speculative claims

4

about the existence and discoverability of other documents." *Chamberlain v. Dep't of Justice*, 957 F. Supp. 292, 294 (D.D.C. 1997). After an agency demonstrates that it conducted a "good faith search in response to a FOIA request, the burden is on the requesting party to provide evidence that other databases [or searches] are reasonably likely to contain responsive documents." *Nolan v. Dep't of Justice*, 146 F. Supp. 3d 89, 97 (D.D.C. 2015).

### III.   Analysis

Defendants argue they are entitled to summary judgment for two reasons. They contend first that the FBI conducted an adequate search, that is, a search "reasonably calculated to uncover all relevant documents." *Kowalczyk*, 73 F.3d at 389. Once an agency establishes the adequacy of its search, the burden shifts to Plaintiffs to show either that the "agency's search was not made in good faith," *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993), or that specific additional searches are reasonably likely to overturn responsive documents, *see Nolen*, 146 F. Supp. 3d at 98. Because Plaintiffs do not argue that they can make such a showing, the dispute centers on whether the FBI's initial search was adequate.

Second, Defendants argue that even if the FBI's search were inadequate, a more extensive one would be unduly burdensome. *See* Defs.' Reply, ECF No. 21, at 5–6. And an agency "need not respond to . . . unreasonably burdensome requests." *Judicial Watch, Inc. v. U.S. Dep't of State*, 681 F. App'x 2, 4 (D.C. Cir. 1994).[2]

---

[2] Plaintiffs, in their Cross-Motion for Summary Judgment, argue that any exclusion asserted by the FBI under § 552(c) is improper and the FBI should be required to release any nonexempt portions of such records. *See* Pls.' Cross-Motion for Summary Judgment, ECF No. 14, at 16. Pursuant to the FBI's standard policies, the FBI submitted an *ex parte*, *in camera* declaration addressing the exclusion claim. *See* Defs.' Notice of Ex Parte, In Camera Filing, ECF No. 23. The Court will not comment publicly on whether the FBI has in fact relied upon any of the exclusions contained in § 552(c). Upon review of the FBI's *ex parte, in camera* declaration, the Court can conclude that if an exclusion was in fact employed, it was justified.

### A.     Adequacy of the Search

Defendants argue that the FBI's searches of the two CRS indices were sufficient to meet its burden under FOIA. Defendants seem to rely on the fact that the FBI followed (and even went beyond) its standard administrative search procedures here. According to David Hardy, the Defendants' declarant, FBI policy for initially responding to most FOIA requests is to conduct a CRS index search and "identify only 'main' files" that are responsive to the FOIA request. Hardy Decl. ¶ 47. But in this instance, at Plaintiffs' request, the FBI went a step further and also conducted reference index searches at the administrative stage. *See* Hardy Decl. ¶ 49. When justifying why it did not conduct a more extensive search, such as a full-text search of the CRS, Defendants rely on FBI policy, stating that "[t]he FBI only conducts full-text searches in extraordinarily rare circumstances in which there is a bona fide factual indication that a full-text search is needed." Defs.' Reply at 4.

Defendants' argument that the FBI followed (or even went beyond) its standard FOIA search procedures and thus satisfied its FOIA search obligation misses the key question, which is not whether they can demonstrate that standard FOIA procedures were followed. Rather, the correct question is whether the search was reasonably calibrated to produce all relevant records. *See Oglesby*, 920 F.2d at 68.

Defendants have failed to make such a showing here. Beginning with the search for the terms "Cowspiracy" and "ag-gag," the FBI's search for those terms in the CRS indices was insufficient because there is no indication that film titles like "Cowspiracy" or terms like "ag-gag" would ever be indexed. Neither term is an "individual," "organization," or "event"—the three categories by which FBI investigators "may index information in the CRS." Hardy Decl. ¶ 37. It also appears unlikely that the name of a documentary film or a term such as "ag-gag"

6

would have "continuing significance to the FBI" such that an FBI employee would deem the term suitable for indexing—and Defendants certainly have not suggested that they would. Hardy Decl. ¶ 57 & n.14. Because Defendants have failed to provide any evidence that terms like these were likely to be indexed, they have not demonstrated that the FBI conducted a sufficient search for records relating to "Cowspiracy" or "ag-gag."

Defendants have also failed to demonstrate that the FBI conducted an adequate search for the enumerated pieces of legislation. In fact, one of the two Hardy declarations essentially makes this point, stating that "FBI records are *not* indexed by cites to particular criminal codes, statutes, or legislative act titles." Second Hardy Decl., ECF No. 22-1, at ¶ 10 (emphasis added). If that is the case, then surely an indexed search of the CRS for a legislative act title cannot be "reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68. After all, according to Defendants' declarant, a search for any legislative act title should yield no results. At oral argument, defense counsel agreed with this analysis and conceded that the FBI's searches of the CRS indices "perhaps should not end the matter with respect to the enumerated pieces of legislation." Hearing Tr. 10.³

The Court therefore concludes that, like its search for "Cowspiracy" and "ag-gag," the FBI's search for the enumerated pieces of legislation was inadequate to meet its search obligations under FOIA.

---

³ **The Court:** So at least as to the enumerated pieces of legislation, you are agreeing that those enumerated pieces of legislation will not appear in the CRS index and the FBI cannot rely on a search of the index to satisfy the FOIA obligation, so why doesn't that end the matter since the FBI hasn't done anything else, at least as to the enumerated pieces of legislation?
**Defense Counsel:** Your Honor, I take your point. I believe that . . . Your Honor has the correct analysis here and that it perhaps should not end the matter at least with respect to the enumerated pieces of legislation.
Hearing Tr. 10:7–10:18.

### B.     Burdensomeness of the Request

The Court turns to Defendants' second argument: that conducting a more extensive search—such as a search of specific offices within the FBI or a full-text CRS search—would prove unduly burdensome.  Defendants assert that a full-text search of the CRS for these terms and legislative acts would likely lead to too many search results that would prove difficult to comb through and produce.  *See* Defs.' Mot. at 7.  Similarly, they assert that asking specific FBI offices to search for the term "ag-gag" or the enumerated pieces of legislation would be "overly broad and would constitute an exhaustive search rather than a reasonable search."  Second Hardy Decl. ¶ 13.

Plaintiffs counter that such searches are unlikely to be overly burdensome.  After all, they contend, the words "Cowspiracy" and "ag-gag" are unique, and thus unlikely to generate a significant number of responses.  *See* Pls.' Mot. at 11.  Additionally, six of the eight pieces of legislation are non-federal, making it unlikely that the FBI's search would produce an overwhelming number of responses.  *See* Pls.' Mot. at 14.

Plaintiffs also point to various situations in which the FBI conducted full-text and specific office searches in response to FOIA requests.  *See Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402–03 (D.C. Cir. 2017) (targeted search of the Office of the General Counsel); *Shapiro v. Dep't of Justice*, 34 F. Supp. 3d 89, 98–99 (D.D.C. 2014) (holding that a full-text search was required); *ACLU v. Dep't of Justice*, Civ. No. 11-2553, 2012 WL 4660515 (D.N.J. Oct. 1, 2012) (targeted search of the Office of the General Counsel and the Office of Congressional Affairs).  Plaintiffs insist that if those searches were not unduly burdensome, the searches requested here surely cannot be.

Under FOIA, "an agency need not honor a FOIA request that requires it to conduct an unduly burdensome search." *Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1, 6 (2003). The agency, however, must "provide [a] sufficient explanation as to why such a search would be unreasonably burdensome." *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995).

This required showing is not insignificant. Courts have consistently found that "merely claiming that a search would be 'costly and take many hours to complete' is insufficient." *Anderson v. U.S. Dep't of State*, 661 F. Supp. 2d 6, 12 n.3 (D.D.C. 2009) (quoting *Pub. Citizen*, 292 F. Supp. 2d at 6). Instead, courts have required "a detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness." *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008). In *Wolf v. CIA*, the court found that the government defendant "met its burden" when it submitted a declaration stating "that a researcher would be forced to review [film] reels on a frame-by-frame basis" and that the entire review "would take approximately 3675 hours and cost about $147,000." 569 F. Supp. 2d at 9. *See also People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 13 (D.D.C. 2006) (finding that a defendant met its burden by explaining that the requested search would require the examination of 44,000 case files and require more than 25,000 hours); *Int'l Counsel Bureau v. U.S. Dep't of Defense*, 723 F. Supp. 2d 54, 59 (D.D.C. 2010) (finding that "enlisting a full-time staff of twelve for a year to review hundreds of thousands of unsorted images would impose . . . an undue burden").

Here, Defendants have not produced any explanation, much less a detailed one, of the time and expense of the proposed searches. Instead, they rely solely on conclusory statements from their declarant, stating that full-text searches and searches of specific offices would be

9

highly burdensome to the FBI. *See* Second Hardy Decl. ¶¶ 11–13. These statements, without more, are insufficient to relieve the FBI from its obligation to do more than search the CRS indices. *See Shapiro v. CIA*, 170 F. Supp. 3d 147, 155–56 (D.D.C. 2016). The Court certainly cannot conclude, on the record before it, that it would be unduly burdensome for the FBI to have to do more than it already has.

## IV. Conclusion

The FBI has not conducted a search "reasonably expected to produce the information" Plaintiffs requested. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). Nor has it demonstrated that such a search would have been overly burdensome. The Court therefore grants in part and denies in part the parties' respective motions and instructs the FBI to conduct a search appropriately calibrated to produce the relevant documents, if any exist. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: March 31, 2021

*[signature]*

CARL J. NICHOLS
United States District Judge